**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**

| | | |
|---|---|---|
| **JAMES RICHARDSON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **Cause No. _____** |
| **v.** | § | |
| | § | |
| **LOWE'S COMPANIES,  INC.** | § | |
| | § | **<u>Jury Trial Demanded</u>** |
| | § | |
| **Defendant.** | § | |

<u>**PLAINTIFF'S ORIGINAL COMPLAINT**</u>

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, James Richardson ("Plaintiff" or "Richardson"), by counsel brings this action against the Defendant, Lowes Home Improvement Center, Inc. ("Defendant" or "Lowes") for violations of the Age Discrimination in Employment Act of 1967, 9 U.S.C. §621 et seq., violations of the Americans with Disability Act of 1990, 42 U.S.C. § 12101 *et seq.,* (the "ADA") and unlawful retaliation in violation the aforementioned statutes, and would respectfully show the Court as follows:

**I.**

<u>**PARTIES**</u>

1.01     Richardson is a citizen of the United States and a citizen and resident of the State of Texas, who resides at 1410 Cedar, Abilene TX 79601.

1.02      Defendant, Lowe's is a North Carolina corporation authorized to do business in the state of Texas and was at all times relevant herein, doing business at 1634 Musgrave Blvd, Abilene, TX 79601.  The Defendant may be served with process by serving its registered agent, Corporation

Service Company d/b/a CSC - Lawyers Incorporating Service Company located at 211 E. 7th Street,

Suite 620, Austin, TX 78701.

## II.

## JURISDICTION AND VENUE

2.01    Jurisdiction is conferred on this Court by 28 U.S.C. § 1331.

2.02    Venue for all causes of action stated herein lies in the Northern District of Texas

because the Defendant resides in this District and a substantial part of the events alleged in this

Complaint took place within this District.  *See* 28 U.S.C. § 1391(b).

## III.

## FACTUAL ALLEGATIONS

3.01    Plaintiff was hired by Defendant on June 16, 2007 as a part-time employee in

Defendant's Flooring department.

3.02.    As a result of his superior performance, Plaintiff was  promoted to a full-time

position on December 1, 2007 and worked  20 hours in the  Flooring department and 20 hours in the

Appliance department where he was eligible for commissions from sales of any appliances that he

sold  in that department.

3.03   On or about February 9, 2008, Plaintiff sustained a work related injury to his shoulder.

Plaintiff was treated for a possible torn rotator cuff and was issued a return to work with a sling to

immobilize his shoulder until he could be seen by his orthopedic surgeon on February 14, 2008.

Following his visit with his surgeon, Plaintiff was placed on the following restrictions:

1.  Motion restrictions: No grasping, squeezing or reaching, including overhead reaching;

2. No Lifting or carrying.

**Plaintiff's Original Complaint**                                                      **Page 2**

3.04   Following his return to work, Defendant's zone manager, Tom Southard ("Southard") zone manager began to harass Plaintiff by questioning him about his performance of certain job functions which Plaintiff had not performed because he had not been formally trained in those functions. Plaintiff tried to explain to Southard that he did not know what he was talking about because he had never done these functions and had never been trained to perform them. Southard replied: "Every time I turn around there's something you don't know."  "How stupid can you be?" How long have you been with Lowes?" "I'll have to get someone else to do your job as I have with everything else that you are supposed to do."

3.05.   Plaintiff promptly complained to Defendant's Store Manager, Brian Acton ("Acton") about Southard's offensive behavior. Acton took no action, but told Plaintiff not to worry about Southard.

3.06   On or about March 5, 2008, Southard approached Plaintiff and said: "Why are you hiding back here? I've been watching you for 20 min. pretending like you are zoning, someone else is seeing you back here hiding while they are doing your job and theirs too". "You may fool Rachel Miller with your Dr.'s excuses, but I've worked with enough convicts to know a faker and a real cripple." Southard went on to say: "I am sick and tired of having lazy-ass cripple people in my zone I'm going to tell Brian Acton to get decent people who can handle the responsibilities of this department or we will never reach our comp. and bonuses". "It's always somebody else who has to do your job because your stupidity got you injured, if you're hurt at all."

3.07   Plaintiff was offended and felt threatened by this verbal abuse and complained about Southard's behavior to Defendant's operations manager, Rena Weeks ("Weeks"). Weeks told Plaintiff that he would just have to appeal to Southard's way or put in for a transfer because he really couldn't

do the labor work in Appliances which like Lumber was a hard, physical job that really isn't for older men. Instead of investigating Plaintiff's complaint, Weeks suggested that Plaintiff think about doing it Southard's way or seriously consider doing some other kind of work.

3.08   On or about March 12, 2008, Plaintiff was disciplined for poor job performance. Plaintiff attempted to complain to Defendant's human resources manager, Rachel Miller ("Miller") about the harassment and retaliation. Miller told Plaintiff that it was a case of his word against Southard's and took no action on Plaintiff's complaint.

3.09   On or about March 15, 2008, Southard directed Plaintiff's immediate supervisor Mariea Bellinger, to bring Plaintiff into Southard's office. When Plaintiff entered Southard's office, Southard told him that he was the zone manager over appliances and that Plaintiff was never to go to or attempt to get another zone manager or any member of management in the store to override a discount sale. The incident that prompted this meeting had to do with a customer who had recently purchased over $9,000.00 in merchandise. The customer had presented a cost comparison price and Southard was not available when she came back with the offer. Plaintiff found another zone manager to approve the price match. This was entirely normal and there was no reason for any discipline or for Southard's verbal abuse towards Plaintiff in front of another employee.

3.10   Plaintiff felt harassed and intimidated and complained again to Miller about Southard's berating him in the presence of another employee. Plaintiff told Miller that he wanted to file a complaint for retaliation and harassment and unfair treatment towards him because of his on-the-job injury. Miller reminded Plaintiff that Southard was a manager and that the store manager would stand behind him. Plaintiff volunteered to Miller that he had recorded the meeting with Southard and had

proof of how Southard had threatened him. Upon hearing this information, Miller became upset with Plaintiff for his having recorded the meeting.

3.11   Instead of responding to Plaintiff's complaint, Plaintiff was ordered to write a statement about his use of a tape recorder at work. After Plaintiff gave a statement, Defendant's sales manager, Jarrell Willet, called Plaintiff back into the office and told him that he needed to give more details of how he had violated company policy. Plaintiff replied that he felt that he needed to protect himself from further harassment and discrimination.

3.12   Thereafter, for approximately three weeks, Plaintiff was assigned to close every night and to do janitorial cleanup in the men's restroom even though he was on a light-duty restriction from his treating physician.

3.13. On April 4, 2008, Plaintiff had surgery on his left's shoulder and was out of work through June 10, 2008.

3.14   On June 10, 2008, Plaintiff returned to work with a light-duty restriction prohibiting reaching and overhead reaching. Upon his return, Defendant informed Plaintiff that he no longer had a position in the appliance department and there was no other position available to accommodate his restrictions other than the position of telephone operator. This was a demotion and Plaintiff took a reduction in pay and was no longer eligible for commissions.

3.15   On July 14, 2008, Weeks called Plaintiff into the store manager's office and presented Plaintiff with a write up regarding his use of a tape recorder at the work on March 15, 2008. As of July 14, 2008, Plaintiff had made three separate complaints about Southard's threatening comments and harassment in front of junior management and customers, but Defendant, instead of responding to Plaintiff's complaints, disciplined him over a four-month old incident.

**Plaintiff's Original Complaint**                                                  **Page 5**

3.16    On August 11, 2008, Plaintiff presented Defendant with a further work status report that had information on his injury imposing restrictions on the use of his left arm and neck and restrictions any overhead activity or lifting or carrying.

3.17   On or about February 17, 2009, Plaintiff met with Human Resources Manager, Shekita Partee ("Partee") regarding his February 13, 2007 write-up and the unfair treatment regarding violations of his work restrictions and denials of accommodations.

3.18   Plaintiff received no response his complaint. On or about March 3, 2009, Plaintiff received another write-up again for poor performance.

3.19   On or about March 6, 2009, Plaintiff presented a final work status report indicating that he was medically restricted from standing or walking for more than four hours per day. Plaintiff was also restricted from lifting or carrying objects weighing more than 15 pounds.

3.19   Defendant, in response, next assigned Plaintiff to a cashier's position. Plaintiff was not allowed to return to the appliance department even though Plaintiff observed that other co-workers who had been injured on the job and had similar lifting restrictions were allowed to return to their same position in appliances without any reduction in salary or earning potential on commissions.

3.20   Plaintiff asked on numerous times whether he could return to his position as a sales specialist in the Appliance department and requested additional training to improve his performance.

3.21   Defendant refused to accommodate Plaintiff's impairments and told Plaintiff that he would have to be 100% restriction free from his doctor before any consideration could be given to these requests.

3.22   Defendant's refusal to reassign Plaintiff to the appliance department was because of his age and disability and in retaliation for his prior complaints regarding the abusive treatment he received from Southard on account of his disability and age.

3.23   Throughout 2009 and 2010, Plaintiff continued to observe that several co-employees were directed by Defendant not to have any conversations with Plaintiff.

3.24   On or about January 17, 2010, Plaintiff met with Partee for a conference call with Defendant's regional human resources Manager, Gerald Wilson ("Wilson"). Wilson told Plaintiff that because he had reported two injuries within a six-month period this indicated that he was unable to handle his position as a sales specialist in appliance. Wilson further told Plaintiff that he should not have been allowed to remain in the department after the first accident and that Lowe's was there to serve its customers not its employees.

3.25   On or about February 21, 2010, the then store manager Chris Zett ("Zett") told Plaintiff that because of his multiple job-related injuries, his degenerative disc disease and his age,  he was lucky to even be offered a cashier's position. Zett further told Plaintiff that he should quit trying to get back onto the sales floor because he (Zett) simply would not approve it. Zett further stated that Plaintiff needed to accept the fact that Zett had covered for him to keep him on as a cashier. Zett then suggested that Plaintiff should take a leave of absence to get psychiatric counseling for his alleged paranoia and anger issues towards management. Zett also told Plaintiff that he could be replaced in five minutes because he had a file cabinet full of college students who wanted his job. Zett further stated that Lowe's didn't care about his disability and that he had cost them money every time he clocked in. Zett further told Plaintiff that he knew that Plaintiff was the one who reported Lowe's to OSHA the year before and advised plaintiff to come to work and keep his mouth shut and not talk to

any employee about anything in the store. Zett further stated: I don't even have to have documentation. If I hadn't covered you all this time with your disability crap you'd already be gone so watch out for who you think about throwing under the bus because I assure you you'll be the one who gets run over."

3.26   Plaintiff learned that on or about March 4, 2010, the head cashier, Vickey Lacey was called into the office by Zett and the operations manager, Wesley Stawarczik who told her not to be seen having personal conversations with Plaintiff.

3.27   On or about March 12, 2010 Joe Driscoll, an installation sales specialist told Plaintiff that the district manager, Rick Failor had questioned him about talking to the Plaintiff.

3.28   On March 26, 2010, Plaintiff was informed that he was being terminated for using a gift card that he had been given by a customer. Plaintiff knew that many employees had accepted tips from customers without any adverse consequences. Plaintiff had obtained approval from two separate managers before he used the gift card and was not aware that he had committed a terminable offense.

3.29   Plaintiff filed a charge of age and disability discrimination and unlawful retaliation with the Equal Employment Opportunity Commission ("EEOC") on September 28, 2010. See Exhibit A attached hereto.

3.30   On June 20, 2011 The EEOC issued a "Letter of Determination" which stated that "the evidence shows that the Charging Party (Plaintiff) was repeatedly subject to age related comments by Respondent's (Defendant") managers and disparate treatment because of his age all in violation of the ADEA. The evidence shows that the Charging Party (Plaintiff) was offended by the harassment." A notice of Right to Sue was mailed to Plaintiff on September 14, 2011. Plaintiff files this Complaint within 90 days of his receipt of his Notice of Right to Sue from the EEOC.

**Plaintiff's Original Complaint**                                                    **Page 8**

## FIRST COUNT

## DISABILITY DISCRIMINATION

4.01    The foregoing paragraphs of this Complaint are incorporated in this Count by reference as if set forth at length herein.

4.02    Defendant was an "employer" under the ADA, 42 U.S.C. § 12111(5)(A).

4. 03    While employed by Defendant, Plaintiff suffered from a disability under the statutory definition provided in the ADA, 42 U.S.C. § 12102(2), because Plaintiff had a physical impairment that substantially limited one or more of his major life activities, a record of impairment, and/or was regarded as having such an impairment by Defendant.  Plaintiff had a record of impairment because he took time off from work for treatment of his diagnosed health condition. Plaintiff was clearly regarded as having a disability when he disclosed to his employer his various restrictions against lifting, walking and standing.

4.04    While employed by Defendant, Plaintiff was a "qualified individual with a disability" under the ADA, 42 U.S.C. § 12111(8).   Plaintiff was and is a qualified individual for the job in question. With reasonable accommodation and schedule adjustments, Plaintiff could have performed, and can perform, the essential functions of his job.

4.05    Despite repeated requests, Defendant refused to accommodate Plaintiff's disability.

4.06    Defendant terminated Plaintiff in part because of his disability.

4.07    Defendant treated Plaintiff less favorably than its non-disabled employees.

**Plaintiff's Original Complaint**                                                      **Page 9**

4.08    Defendant violated the ADA, 42 U.S.C. § 12112, by terminating Plaintiff and/or discriminating against him in connection with his advancement, compensation, job training, and other terms, conditions, and privileges of his employment because of Plaintiff's disability.

4.09    Such discrimination by Defendant against Plaintiff was intentional. Accordingly, Plaintiff is entitled to recover damages from Defendant for back pay, front pay, past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. Further, this discrimination was done with malice or with reckless indifference to Plaintiff's federally-protected rights.  Plaintiff is therefore also entitled to recover punitive damages.

4.10    Plaintiff is entitled to an award of attorneys' fees, expert fees, and costs under the ADA.

## SECOND COUNT

## AGE DISCRIMINATION AND HARASSMENT

5.01    The foregoing paragraphs of this Complaint are incorporated in this Count by reference as fully as if set forth at length herein.

5.02    Plaintiff, whose date of birth is August 25, 1952 was within the protected age bracket under the ADEA and was approximately 58 years of age when he was terminated.

5.03   During his employment, Plaintiff was repeatedly told by Defendant's managers that he could not perform his assigned job duties in Defendant's Appliance department because of his age.

5.04   Throughout Plaintiff's employment Plaintiff endured numerous age related comments from Defendant's management about his age and was specifically told that he was too old to perform certain job functions.

**Plaintiff's Original Complaint**                                                    **Page 10**

5.05   Plaintiff observed younger people with less experience being assigned to positions that Plaintiff was qualified to perform.

5.06   Defendant's comments about Plaintiff's age created a hostile work environment which Plaintiff was forced to endure in order to keep his job.

5.07   Plaintiff's termination of employment and the age related harassment show that Defendant believed that Plaintiff's age substantially limited his ability to perform his job and clearly relied on Plaintiff's age as a material and determining factor in its treatment and termination of the Plaintiff's employment.  On information and belief, Plaintiff was replaced by a much younger employee.

5.08   Defendant employed in an industry affecting commerce twenty (20) or more employees for each working day in each of twenty (20) or more weeks in the current or preceding calendar year.  Accordingly, it is subject to the provisions of the ADEA.

5.09   Plaintiff was qualified to perform the essential functions of his former job, as well as other jobs that were available at Defendant's store.

5.10   Defendant intentionally discriminated against Plaintiff because of his age by exhibiting bias toward Plaintiff, treating Plaintiff in a discriminatory manner by making repeated age related comments compared with his younger peers, and discharging Plaintiff.

5.11   Defendant engaged in a single continuous course of conduct of discrimination against Plaintiff because of his age.

5.12   Such discrimination by Defendant against Plaintiff was intentional.  Accordingly, Plaintiff is entitled to recover damages from Defendant for back pay, front pay, benefits, future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life, other non-

pecuniary losses and compensatory damages.  Further, this discrimination was willful.  Plaintiff is therefore also entitled to recover liquidated damages.  Claimant is also entitled to recover all costs of court and attorneys' fees.

## THIRD COUNT

## UNLAWFUL RETALIATION

6.01    Plaintiff incorporates the foregoing paragraphs as though set forth verbatim herein.

6.02    Prior to Plaintiff's filing his charge of discrimination with the EEOC, Plaintiff made repeated complaints to Defendant's management and to Defendant's Human Resources department about discrimination and harassment on the basis of his age and his disability.

6.03    Plaintiff's complaints to management regarding discrimination and harassment ion the basis of his age and disability constitute protected activity under Title VII of the Civil Rights Act as amended

6.04    Defendant ignored his complaints and instead disciplined Plaintiff for inconsequential trivial reasons in retaliation for his protected activity.

6.05    Plaintiff was harassed, unfairly disciplined, threatened with termination and ultimately terminated from his employment for reasons that were clearly discriminatory and retaliatory.

6.06    Such discrimination by Defendant against Plaintiff was intentional.  Accordingly, Plaintiff is entitled to recover damages for back pay, front pay, past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.  Further, Defendant's acts of retaliation were done with malice in clear response to Plaintiff's exercise of his federally protected right to engage in protected activity.  Plaintiff is therefore also

entitled to recover punitive damages.

      6.07    Plaintiff is entitled to an award of attorneys' fees and costs under the ADA and the ADEA.

## FOURTH COUNT

## JURY TRIAL REQUESTED

      7.01    Plaintiff requests a trial by jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that Plaintiff be granted the following relief against Defendant:

(1)    Judgment for actual damages in the amount of past and future lost earnings and benefits and damages to past and future earnings capacity and past and future medical expenses;

(2)    Judgment for past and future pecuniary losses, emotional pain and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses;

(3)    Damages for past and future mental anguish and emotional distress and physical distress;

(4)    Exemplary damages in an amount to be determined by the trier of fact;

(5)    An award of liquidated and/or statutory damages in an amount equal to all lost wages, salary, employment benefits, and other compensation lost as a result of Defendant's wrongful conduct in the amount proven at trial;

(6)    Prejudgment and Post judgment interest at the maximum legal rate;

(7)    Attorneys' fees;

(8)    Experts fees;

(9)      All costs of suit; and

(10)     Such other and further relief to which Plaintiff may be justly entitled.
                 Respectfully submitted,


                         KILGORE & KILGORE, PLLC
                         By: s/Nicholas A O'Kelly
                         NICHOLAS A. O'KELLY
                         Texas State Bar No. 15241235
                         ROBERT E. GOODMAN, JR.
                         State Bar No. 08158100

                         Kilgore & Kilgore, PLLC
                         3019 Carlisle Street
                         Dallas, TX  75204-2471
                         (214) 969-9099 - Telephone
                         (214) 953-0133 – Fax

                         ATTORNEYS FOR PLAINTIFF